**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| ENERGY & ENVIRONMENT LEGAL INSTITUTE, and FREE MARKET ENVIRONMENTAL LAW CLINIC, <br><br>     Plaintiffs, <br><br>     *v.* <br><br> UNITED STATES DEPARTMENT OF STATE, <br><br>     Defendant. | )<br>)<br>)<br>)<br>)<br>)   No. 1:15-cv-423 (LO/TCB)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT

This is a Freedom of Information Act ("FOIA") action in which co-plaintiffs Energy & Environment Legal Institute ("EELI") and Free Market Environmental Law Clinic ("FMELC") (together, "Plaintiffs") seek documents from the defendant, the U.S. Department of State (the "Department"), pursuant to two FOIA requests that Plaintiffs jointly submitted in 2015. Even though document productions are still ongoing, EELI *alone* has moved for full summary judgment, challenging the redactions on ten of the documents that the Department has produced ("the Disputed Documents") and abandoning any challenge to the adequacy of the Department's search for either of the FOIA requests. Dkt. 34-1 at 5.

For the reasons below and in the attached *Vaughn* declaration, the redactions on the Disputed Documents are proper, and accordingly the Court should deny EELI's motion for summary judgment and its request for *in camera* review. The Court should then grant the Department's cross-motion for summary judgment, vacate the Department's obligation to continue reviewing and producing documents, and close this case.

## INTRODUCTION AND SUMMARY

In 2015, Plaintiffs jointly filed with the Department two FOIA requests seeking records regarding highly sensitive international climate agreement negotiations.  One of the requests returned no responsive records, but the volume of potentially responsive material for the other request was significant, and, as Judge Buchanan has noted, the documents contain highly technical and "sensitive information that have to go through a number of levels of review to decide how they're going to be … redacted, or if they're going to be released."  Dkt. 35 at 9.  Soon after jointly submitting their FOIA request, Plaintiffs jointly filed this suit.  During a hearing in 2015, Judge Buchanan told Plaintiffs' counsel that their "request is so overbroad" that "you've got to narrow it if you want [the documents] fast."  Dkt. 35 at 12, 14.  In response, Plaintiffs asked for leave to "bifurcate[] this into the productions that we've received thus far and productions that are still ongoing, [and] we could file two separate motions for summary judgment and resolve it that way."  *Id.* at 15.  Judge Buchanan rejected that request and ruled, "No.  One is enough."  *Id.*  Plaintiffs sought no further review of that unequivocal ruling.  Since that time, the Department has been reviewing and producing documents to Plaintiffs on a rolling basis.

Given Judge Buchanan's ruling, and given Plaintiffs' stated desire to identify and quickly obtain copies of certain key documents, *see, e.g.*, Dkt. 34-1 at 4 & n.1 (asking for documents in advance of then-imminent Paris Agreement withdrawal decision); Dkt. 35 at 10 (same, for then-upcoming conference), the Department operated on the understanding that, once Plaintiffs identified those critical records, Plaintiffs would jointly file their one permitted motion for summary judgment challenging the withholdings on only that narrow set of documents.  *See, e.g., Georgia-Pac. Corp. v. IRS*, 517 F. Supp. 2d 65, 69 n.4 (D.D.C. 2007) (by "not

challeng[ing]" certain FOIA withholdings, the requester can expedite the case by "narrow[ing] the issues for this Court's review" to only the "most relevant" records (quotation marks omitted)).  The Court could then quickly resolve those disputes and close this case, which has been on the docket for several years.

The Department is still in the process of reviewing and producing documents that are responsive to Plaintiff's request, but EELI has now filed just such a motion designed to narrow this case down to a handful of critical "documents containing what [EELI] contends are unlawful redactions."  Dkt. 34-1 at 5.  Indeed, it is styled as a motion for summary judgment in full, not in part; it expressly abandons any challenge to the adequacy of the Department's search for either of the FOIA requests; it objects to the redactions on only the ten Disputed Documents, which it "invites the Court to review" *in camera* because "the number of documents in dispute is small"; and it requests that the Court set a schedule for determining attorney's fees.  Dkt. 34-1 at 5, 6, 13.  This motion confirms that Plaintiffs strongly desire to try and obtain unredacted copies of these crucial documents as soon as possible, at the strategic expense of other potential challenges.  *See Georgia-Pac.*, 517 F. Supp. 2d at 69 n.4.  As explained below and in the attached declaration, the withholdings on the Disputed Documents are proper, and therefore the Court should deny that motion for summary judgment.  *See* Part I, *infra*; Declaration of Eric F. Stein ("Stein Decl.") (attached as Exhibit 1).

Unexpectedly, however, in what appears to be an attempt to circumvent Judge Buchanan's ruling from 2015, co-FOIA-requester and co-plaintiff FMELC states that it has decided *not* to join EELI's motion.  Dkt. 34-1 at 4.  FMELC also includes a disclaimer that it may want to file *another* motion for summary judgment later, challenging an as-yet-unknown set

of documents, even though both Plaintiffs *expressly* acknowledge that Judge Buchanan rejected Plaintiffs' prior request to pursue that precise course of action.  *Id.*

Plaintiffs jointly submitted the relevant FOIA request, jointly engaged the same counsel, jointly filed the operative complaint, jointly litigated in court, and never challenged Judge Buchanan's order to prosecute this case via a single joint motion for summary judgment.  Given this, it strains belief that Plaintiffs have suddenly concluded that their interests are so divergent that they must file separate motions for summary judgment, at different times, on the *same* FOIA request, despite Judge Buchanan's ruling forbidding such conduct and despite the fact that productions still continue.  The more likely explanation for this odd procedural situation, for which there appears to be no precedent in FOIA caselaw, is that Plaintiffs have decided that they want unredacted copies of the ten Disputed Documents as soon as possible—but they know that if they jointly move for summary judgment on those documents now, then the case will be closed once the Court resolves those challenges, and thus Plaintiffs will not be entitled to any of the remaining productions from the Department, which would otherwise continue for at least several more months.  Thus, in the litigation equivalent of trying to have their cake and eat it too, Plaintiffs apparently decided that only EELI would move for summary judgment now, and FMELC would be kept in reserve so it may possibly file its "own" such motion at some unknown later date, in the event that Plaintiffs decide they want to challenge the withholdings on additional documents later produced by the Department.

The Court should reject this gamesmanship.  By filing a motion for full summary judgment that abandons *any* challenges to the adequacy of the Department's search and to *any* redactions except on the ten Disputed Documents, and in full knowledge of Judge Buchanan's ruling, Plaintiffs knew full well that they were putting only those Disputed Documents at issue

4

and thereby abandoning other challenges—despite the self-serving disclaimer that they might want to file more motions later.  Accordingly, once the Court resolves the Disputed Documents, the Court should grant the Department's cross-motion for summary judgment, vacate any requirements that the Department continue reviewing and producing documents, and close this case because at that point there will be no continuing material dispute about the Department's compliance with FOIA.  *See* Part II, *infra*.

### THE DEPARTMENT'S STATEMENT OF MATERIAL UNDISPUTED FACTS

The Department's statement of undisputed material facts is presented below.  This statement also addresses EELI's statement of undisputed facts, *see* Dkt. 34-1 at 1-2, with which the Department largely concurs except that several of EELI's "facts" are, in actuality, legal conclusions.

(1)     Plaintiffs jointly submitted two FOIA requests to the Department in 2015.  The first request ("January 28 Request"), which was marked by the Department as Request F-2015-02212, is dated January 28, 2015 and contains two parts.  Part 1 seeks, from August 1, 2014, to the date on which the Department processed the request, copies of all emails or text messages that were (a) sent to or from Kerri-Ann Jones, Daniel Reifsnyder, William Gibbons-Fly, David A. Balton, or Todd Stern (whether as to, from, cc, or bcc), and (b) to or from any individual(s) with an email address ending in (including as to, from, cc, or bcc) any of the following list of email domain names, or including such domain names anywhere in the body of the email:

(a)     "wwfus.org",

(b)     "nrdc.org",

(c)     "greenpeace.org" or "gpfdn.com", and/or

(d)     "sierraclub.org".

Stein Decl. ¶ 5.

(2)    Part 2 of the January 28 Request seeks, from August 1, 2014, to the date on

which the Department processed the request, copies of all emails or text messages that were

(a) sent to or from Kerri-Ann Jones, Daniel Reifsnyder, William Gibbons-Fly, David A.

Balton, or Todd Stern, and (b) which use one or more of the following terms anywhere in the

email including in body and/or the to:, from:, cc:, bcc: or subject fields:

    (a)    "Global warming",

    (b)    "Climate change",

    (c)    "Paris",

    (d)    "UNCCC",

    (e)    "UNFCCC",

    (f)    "Kyoto", and/or

    (g)    "APEC".

Stein Decl. ¶ 5.

(3)    The second request ("February 2 Request"), which was marked by the

Department as Request F-2015-02392, is dated February 2, 2015, and seeks copies of any

correspondence and/or memoranda and any enclosed, attached, or otherwise related documents

sent from Day Mount in the Bureau of Oceans and International Environmental and Scientific

Affairs to the IPCC Working Group, dated November 15, 1995. Stein Decl. ¶ 7; Dkt. 15-1, ¶ 6.

The Department completed its search and response for the February 2 Request, and no

responsive documents were found.  Dkt. 15-1, ¶ 23.  EELI's motion states that it does not

challenge this second request.  *See* Dkt. 34-1 at 1.

(4)    The Department acknowledged both requests in separate letters dated February

6

5, 2015, and granted Plaintiffs full fee waivers for the requests.  Dkt. 1, ¶¶ 3, 5.

(5)     On March 30, 2015, Plaintiffs jointly filed this lawsuit, seeking to compel the production of documents responsive to the two requests.  Dkt. 1.  The Department answered on May 1, 2015.  Dkt. 6.  Based on its initial understanding of the scope of potentially responsive materials, the Department agreed to complete production by August 10, 2015.  Dkt. 15 at 1-2.

(6)     The Department then (a) completed processing and producing all documents responsive to Part 1 of the January 28 Request; and (b) completed processing and producing all documents responsive to Part 2 of the January 28 Request 1 for three of the five individuals identified in that request.  Dkt. 15-1, ¶ 23.

(7)     However, with respect to two of the five listed individuals for Part 2 of the January 28 Request, the Department identified a substantially larger than expected volume of potentially responsive materials.  Dkt. 15-1, ¶ 24.  In particular, the Department received more than 7,700 potentially responsive emails for Daniel Reifsnyder and more than 9,700 potentially responsive emails for Todd Stern.  *Id.*

(8)     The records in question involve highly sensitive e-mails regarding the United States's environmental policies, negotiating positions, and assessments of other countries' positions.  Dkt. 15-1, ¶¶ 21-22.  As Judge Buchanan has confirmed, this review can be performed only by individuals with the requisite security clearances and subject matter expertise.  Dkt. 35 at 11; Dkt. 15-1, ¶¶ 17, 22.  The Department originally had two such qualified individuals who could review documents potentially responsive to Plaintiffs' requests, Dkt. 15-1, ¶ 22, and the Department soon onboarded a third reviewer, *id.*, ¶ 26.

(9)     Accordingly, the Department recognized that, based on its limited resources and the sensitive review it needed to complete, there was no possible way that it could review more

than 17,000 emails prior to the previously agreed-upon deadline. *Id.*, ¶ 25.

    (10)    On August 10, 2015, the Department filed a motion to alter the production schedule, Dkts. 14, 15, on which Judge Buchanan heard oral argument on September 4, 2015, Dkt. 35 (transcript). At this hearing, Judge Buchanan described Plaintiffs' "request [as] so overbroad" that Plaintiffs have "got to narrow it if [they] want [the documents] fast." *Id.* at 12, 14. In response, Plaintiffs proposed a course of action where they would "bifurcate[] this into the productions that we've received thus far and productions that are still ongoing, [and] we could file two separate motions for summary judgment and resolve it that way." *Id.* at 15. Judge Buchanan rejected Plaintiffs' proposal and ruled, "No. One is enough." *Id.* Plaintiffs sought no further review of that ruling. Judge Buchanan further ruled that the Department could produce the records in rolling batches as they are reviewed and processed. *Id.* at 13.

    (11)    For the better part of two years, the Department has continued to review the highly sensitive records potentially relevant to Plaintiffs' January 28 request and has subsequently produced documents to Plaintiffs on a rolling basis, amounting to over 6,500 pages of materials produced thus far. Many documents contain redactions due to their sensitive nature, but many other documents contain no or minimal redactions. The Department has also filed status reports every 90 days, *see* Dkts. 25-29, 31, 39, and has been in contact with Plaintiffs' counsel regarding narrowing Plaintiffs' requests in order to speed the resolution of this case. The documents remaining to be reviewed and produced are primarily older records from 2014. Dkt. 31 at 2.

    (12)    On May 16, 2017, without any advance notice to the Department or its counsel, EELI filed a motion for summary judgment challenging the redactions on ten specified documents produced pursuant to the January 28 Request, seeking *in camera* review of that

"small" "number of documents," and abandoning all other claims.  Dkt. 34-1 at 1, 5, 6.[1]  The

Disputed Documents are bates stamped as:

      (a)      C05821788, *see* Dkt. 34-2;

      (b)      C05821752, *see* Dkt. 34-3;

      (c)      C05897945, *see* Dkt. 34-4;

      (d)      C05822362, *see* Dkt. 34-5;

      (e)      C05810405, *see* Dkt. 34-6 at 1;

      (f)      C05810393, *see* Dkt. 34-6 at 2;

      (g)      C05809018, *see* Dkt. 34-7 at 1;

      (h)      C05809021, *see* Dkt. 34-7 at 2;

      (i)      C05809134, *see* Dkt. 34-7 at 3-4; and

      (j)      C05859569, *see* Dkt. 34-8.

(13)      FMELC states that it has chosen not to join EELI's motion and that it may move

for summary judgment on the same FOIA request at a later date.  Dkt. 34-1 at 4.

## STANDARD OF REVIEW

"As a general rule, [FOIA exemption issues] and all other FOIA determinations should

be resolved on summary judgment."  *Hanson v. USAID*, 372 F.3d 286, 290 (4th Cir. 2004).

"[W]hen the [FOIA] requester files a motion for summary judgment, the Government

ultimately has the onus of proving that the [disputed] documents are exempt from disclosure."

*Pub. Citizen Health Research Grp. v. FDA*, 185 F.3d 898, 904 (D.C. Cir. 1999) (alterations and

quotation marks omitted).

---

[1] The motion was initially filed on May 16, 2017, *see* Dkt. 33, with a corrected version filed on May 17, 2017, *see* Dkt. 34-1.

To obtain summary judgment in a FOIA action, the moving party must show, viewing the facts in the light most favorable to the non-moving party, that there is no genuine dispute with regard to the agency's compliance with FOIA. *See Steinberg v. DOJ*, 23 F.3d 548, 551 (D.C. Cir. 1994). The Court may award summary judgment based solely upon the information provided in affidavits or declarations. "'If the Government fairly describes the content of the material withheld and adequately states its grounds for nondisclosure, and if those grounds are reasonable and consistent with the applicable law, the district court should uphold the Government's position.'" *Carter, Fullerton & Hayes, LLC v. FTC*, 601 F. Supp. 2d 728, 738 (E.D. Va. 2009) (Lee, J.). Agency declarations are accorded a presumption of good faith. *See, e.g.*, *Bowers v. DOJ*, 930 F.2d 350, 357 (4th Cir. 1991).[2]

It is well established that a FOIA requester can decide "not [to] challenge" certain FOIA withholdings or the adequacy of the agency's search, which will ensure that the case proceeds more expeditiously by "narrow[ing] the issues for th[e] Court's review" to only the "most relevant" ones. *Georgia-Pac.*, 517 F. Supp. 2d at 69 n.4 (quotation marks omitted). In such cases where a party "waive[s]" or "drop[s]" challenges to certain redactions or to the adequacy of the agency's search, the Court considers those abandoned claims to be undisputed and therefore addresses "only" the "remaining" challenges. *ACLU v. DOJ*, 265 F. Supp. 2d 20, 26 (D.D.C. 2003).

## ARGUMENT

EELI's motion for summary judgment challenges the propriety of the redactions for ten e-mails produced pursuant to Plaintiffs' joint January 28 FOIA Request. *See* Dkt. 34-1. These

---

[2] The form of an agency's submission to justify its exemptions – whether it be a *Vaughn* index, a detailed declaration, or a narrative – is immaterial. *Gallant v. NLRB*, 26 F.3d 168, 173 (D.C. Cir. 1994).

Disputed Documents are attached to the motion for summary judgment filed by Plaintiffs'

counsel.  *See* Dkts. 34-2, 34-3, 34-4, 34-5, 34-6, 34-7, 34-8.  The motion does not challenge any

other documents and expressly abandons any challenge to the adequacy of the Department's

search, as well as any challenge to the February 2 Request.  Dkt. 34-1 at 1, 5.  As shown below,

every redaction on the Disputed Documents is proper and within well-established FOIA

exemptions.  Accordingly, the Court should reject EELI's motion for summary judgment on

these documents.  Once the Court resolves those challenges, the Court should enter summary

judgment in favor of the Department and close this case.

## I.     The Department's Redactions To The Disputed Documents Are Proper.

### A.     Exemption 1.

Four of the Disputed Documents contain withholdings pursuant to FOIA Exemption 1,

which authorizes an agency to withhold or redact materials that are "(A) specifically authorized

under criteria established by an Executive order to be kept secret in the interest of national

defense or foreign policy and (B) are in fact properly classified pursuant to such Executive

order."  5 U.S.C. § 552(b)(1).  "[T]he text of Exemption 1 itself suggests that little proof or

explanation is required beyond a plausible assertion that information is properly classified."

*Morley v. CIA*, 508 F.3d 1108, 1124 (D.C. Cir. 2007).  Accordingly, courts "accord substantial

weight to an agency's affidavit concerning the details of the classified status of the disputed

record because the Executive departments responsible for national defense and foreign policy

matters have unique insights into what adverse [effects] might occur as a result of a particular

classified record."  *Larson v. Dep't of State*, 565 F.3d 857, 864 (D.C. Cir. 2009) (quotation

marks omitted).

As relevant to this case, Executive Order 13526 ("E.O. 13526") "prescribes a uniform

system for classifying, safeguarding, and declassifying national security information."  Stein

Decl. ¶ 9.  Several of the documents that Plaintiffs have challenged include information

classified at the confidential level under E.O. 13526, which states that "'Confidential' shall be

applied to information, the unauthorized disclosure of which reasonably could be expected to

cause damage to the national security that the original classification authority is able to identify

or describe."  *Id.*  Information withheld in this case under Exemption 1 is "properly classified

pursuant to Sections 1.4(b) and 1.4(d) of E.O. 13526."  *Id.*, ¶ 12.  Those provisions state:

"Information shall not be considered for classification unless its unauthorized disclosure could

reasonably be expected to cause identifiable or describable damage to the national security in

accordance with section 1.2 of this order, and it pertains to one or more of the following: … (b)

foreign government information; … (d) foreign relations or foreign activities of the United

States, including confidential sources."  *Id.* (quotation marks omitted).

Department officials with original classification authority have "determined that the

information withheld pursuant to Exemption 1" in this case "falls within Sections 1.4(b) and (d)

of E.O. 13526, and requires classification at the CONFIDENTIAL level because its unauthorized

disclosure reasonably could be expected to cause damage to the national security."  *Id.*, ¶¶ 14,

15.  The four Disputed Documents containing redactions pursuant to FOIA Exemption 1 are:

**(1)  C05897945 (Dkt. 34-4).**  This document is a three-page email exchange dated

May 7, 2015, including emails between two Department employees (Daniel Reifsnyder and

Valeri Vasquez); and an email between one of those Department employees (Reifsnyder) and an

Algerian diplomat (Ahmed Djoghlaf) with whom that Department employee was serving as a

Co-Chair for an ad hoc working group under the United Nations Framework Convention on

Climate Change ("UNFCCC").  Stein Decl. ¶ 36.  On May 25, 2016, the Department classified

portions of the document that had originally been unclassified as CONFIDENTIAL, under

Sections 1.4(b) and (d) of E.O. 13526, which pertain to foreign government information and foreign relations or foreign activities of the United States, including confidential sources. Stein Decl. ¶ 37.

The information withheld "consists of a confidential communication from an Algerian diplomat to a Department official, both serving as Co-Chairs of an ad hoc working group under the UNFCCC, that includes possible topics and points to be discussed at an upcoming meeting." *Id.* "This information was communicated for the purposes of facilitating international negotiations with an expectation of confidentiality." *Id.* The ability to communicate with and obtain information from foreign governments is "essential to the formulation and successful implementation of U.S. foreign policy," and "[r]elease of foreign government information provided in confidence, either voluntarily by the Department or by order of a court, would cause foreign officials to believe that U.S. officials are not able or willing to observe the confidentiality expected in such interchanges." *Id.* Thus, the "inability of the United States to maintain confidentiality in its diplomatic exchanges would inevitably chill relations with other governments and could reasonably be expected to damage U.S. national security by diminishing our access to vital sources of information" and could also "undermine the U.S. Government's future ability to serve in leadership positions on multilateral bodies." *Id.* For these reasons, the Exemption 1 redaction applied to this document was proper.

(2)     **C05822362 (Dkt. 34-5).** This document is a one-page email exchange between a Department official and a former White House official dated March 27, 2015, with the subject "China." Stein Decl. ¶ 40. On January 8, 2016, the Department classified portions of the document that had originally been unclassified as CONFIDENTIAL, under Section 1.4(d) of E.O. 13526. *Id.*, ¶ 41. The withheld material "concerns discussions regarding the

Department's approach on climate change efforts with a foreign counterpart and the relating of messages that would support U.S. foreign policy objectives to foreign counterparts." *Id.* As with the document discussed above, confidentiality of such information "is a vital aspect of successful foreign relations, including information about the nature of other countries' engagement with the United States." *Id.* "There could be serious and demonstrable harm to our foreign relations if foreign governments that are the subject of such discussions were to become aware of them," and thus "U.S. Government officials must be able to engage in non-public evaluations of relationships with specific countries and leaders, and non-public communication of messages to relay to foreign audiences, without fear that the information would become public and cause damage to those very relationships." *Id.* Accordingly, this information was properly withheld under Exemption 1.

**(3) and (4) C05810405 (Dkt. 34-6 at 1) and C05810393 (Dkt. 34-6 at 2).** These documents consist of an overlapping e-mail chain between Department and other government agency officials, and persons outside the government who are involved in climate change initiatives. Stein Decl. ¶ 44. The information withheld pursuant to Exemption 1 "consists of discussion regarding how to address the concerns of particular foreign countries with regard to technology and the protection of intellectual property in the context of climate change negotiations." *Id.*, ¶ 45. On August 3, 2015, the Department classified portions of the document that had been originally unclassified as CONFIDENTIAL, under Sections 1.4(b) and (d) of E.O. 13526. Stein Decl. ¶ 45. As with the documents above, "[c]onfidentiality is a vital aspect of successful foreign relations," and the "[r]elease of foreign government information provided in confidence, either voluntarily by the Department or by order of a court, would cause foreign officials and others who provide us with the information to believe that U.S.

officials are not able or willing to observe the confidentiality expected in such interchanges." *Id.* Further, "release of this information could cause demonstrable harm to our foreign relations if the foreign governments that are the subject of such discussions were to become aware of them." *Id.*

This remains true regardless of the ultimate source of the information; indeed, disclosure of this information could cause private individuals with knowledge of foreign affairs information to be less willing in the future to furnish information important to the conduct of U.S. foreign relations, including from individuals who possess "outside expertise" on certain international issues. *Id.* Accordingly, the withholdings under Exemption 1 were proper.

As discussed above, the Department need only offer "a plausible assertion that information is properly classified," *Morley*, 508 F.3d at 1124, and the explanations given in the attached Stein Declaration far exceed that minimal requirement. Accordingly, the Court should reject EELI's challenges to these redactions.

### B.      Exemption 5.

Five of the Disputed Documents contain withholdings pursuant to FOIA Exemption 5, which exempts from disclosure documents protected by, *inter alia*, (1) the deliberative process privilege, 5 U.S.C. § 552(b)(5), which "protects not only communications which are themselves deliberative in nature, but all communications which, if revealed, would expose to public view the deliberative process of an agency," *Russell v. Dep't of Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982); and (2) the attorney work-product doctrine and attorney-client privilege, *Tax Analysts v. IRS*, 294 F.3d 71, 76 (D.C. Cir. 2002).

To invoke the deliberative process privilege, an agency "must show that, in the context in which the materials are used, the documents are both predecisional and deliberative." *City of Va. Beach, Va. v. U.S. Dep't of Commerce*, 995 F.2d 1247, 1253 (4th Cir. 1993) (quotation marks

omitted).  Pre-decisional documents are documents that are prepared to aid the agency in

reaching a decision.  *See id.*  However, an agency need not identify a specific decision with

respect to each document for which the privilege is claimed.  *Id.*  "The critical factor in

determining whether the material is deliberative in nature is whether disclosure of the

information would discourage candid discussion within the agency."  *Electronic Privacy Info.*

*Ctr. v. DHS*, 384 F. Supp. 2d 100, 112 (D.D.C. 2005) (quotation marks omitted).

The deliberative process privilege thus routinely protects "recommendations, draft

documents, proposals, suggestions, and other subjective documents which reflect the personal

opinions of the writer rather than the policy of the agency."  *Va. Beach*, 995 F.2d at 1253

(quotation marks omitted).  When evaluating a claim of deliberative process privilege, courts

give "considerable deference to the agency's explanation of its decisional process, due to the

agency's expertise in determining what confidentiality is needed to prevent injury to the quality

of agency decisions."  *Pfeiffer v. CIA*, 721 F. Supp. 337, 340 (D.D.C. 1989) (internal quotations

omitted).

Contrary to EELI's suggestion, *see* Dkt. 34-1 at 9-10, Exemption 5—by its very text—

applies to both "inter-agency" *and* "intra-agency" documents.  5 U.S.C. § 552(b)(5).  Further,

under the "consultant corollary," as explained by the Supreme Court, certain records submitted

by outside consultants play essentially the same part in an agency's decision-making process as

the documents prepared directly by agency personnel.  *Dep't of Interior v. Klamath Water Users*

*Protective Assoc.,* 532 U.S. 1, 10-12 (2001).  In such a situation, the documents are exempt from

disclosure.  *Id.*

The four Disputed Documents containing redactions pursuant to FOIA Exemption 5 are:

(1)     **C05821788 (Dkt. 34-2):** This document is a three-page intra-agency email exchange among Department officials dated March 11-12, 2015, with the subject "Jennifer Morgan."  Stein Decl. ¶ 30.  The first email in the chain is "from a Department official sharing certain information and reactions from a meeting with a staff member of a non-governmental organization ('NGO') about engagement with congressional staffers regarding a potential climate change agreement then being negotiated (negotiations that ultimately concluded in the adoption of the Paris Agreement)."  *Id.*  This information was provided "for the purpose of deliberating about potential Department engagement with congressional staff," and the remaining emails in the chain "contain back and forth deliberations about how to brief and otherwise engage with Congress on the Administration's positions related to a climate change agreement."  *Id.*  This material is clearly pre-decisional and deliberative with regard to a "final determination on what information to share with congressional staff related to the agreement," and thus its release "could reasonably be expected to chill the open and frank exchange of ideas, recommendations, and opinions that occurs when Department officials are developing the Administration's position on a sensitive issue."  *Id.*, ¶ 31.  Accordingly, this information was properly withheld under Exemption 5.  Further, a portion of the information has been withheld because of attorney-client privilege, as the "communications include a Department attorney's advice regarding a possible course of action."  *Id.*; *see Tax Analysts*, 294 F.3d at 76.

(2)     **C05821752 (Dkt. 34-3):** This document is a three-page inter-agency email exchange among Department officials, White House officials, and a Department of Energy contract employee dated March 3-11, 2015, with the subject "Cambridge Energy Research Associates big Houston event."  Stein Decl. ¶ 32.  The withheld information consists of "internal discussions among U.S. Government officials, including a contractor for the Department of

Energy at the time, regarding the proposed attendance of a Department official at the upcoming

2015 annual conference held by Cambridge Energy Research Associates and details regarding

the presentation the official would make at the event." *Id.* This information is pre-decisional

and deliberative with respect to a "final determination on whether a Department official should

participate as a panelist in a public event and the possible content of a presentation to be given at

such event, and contains the authors' recommendations, solicitation of internal input, and

personal opinions regarding the topics to be discussed at the public event." *Id.*, ¶ 33. The release

of this information could reasonably be expected to have a chilling effect on the open and frank

expression of ideas and would also impede the ability of responsible government officials to

formulate and carry out executive branch programs by inhibiting candid internal discussion and

the expression of recommendations and opinions regarding a possible course of action. *Id.*

Accordingly, it was properly withheld under Exemption 5.[3]

    **(3)**    **C05897945 (Dkt. 34-4):** This document, which is discussed in greater detail

above in the Exemption 1 section, consists of an email exchange between two Department

employees, and an email between one of those Department employees and an Algerian

diplomat. Stein Decl. ¶ 36. The portions of this email chain that were withheld under

Exemption 5 consist of "internal discussions among U.S. Government officials regarding a

possible response to a foreign official as well as recommendations on possible topics for

discussion and talking points for an upcoming meeting." *Id.*, ¶ 38. This information "contains

---

[3] Simultaneous to the filing of this memorandum, the Department is serving on Plaintiffs' counsel a supplemental production containing a copy of this document that reveals several lines of text that were previously withheld under Exemptions 5 and 6. This supplemental production illustrates the careful and *bona fide* review that the Department has given to all of the redactions on the Disputed Documents in preparation of this Memorandum and its accompanying declaration.

the author's personal opinions and preliminary assessments" and therefore its release could reasonably be expected to have a chilling effect on the open and frank expression of ideas, thereby impeding the executive branch's ability to engage in candid internal discussions. *Id.* Accordingly, it is properly withheld under Exemption 5.

(4)     **C05859569 (Dkt. 34-8):** This document is a two-page inter-agency email exchange between a Department and a White House official. Stein Decl. ¶ 49. The Department withheld information that consists of "a draft list of persons and entities who were considered as possible validators of specific climate change work of the Administration." *Id.*, ¶ 50. Release of the withheld material, which is "pre-decisional and deliberative with regard to a final list of potential validators," could reasonably "be expected to chill the open and frank exchange of ideas, recommendations, and opinions that occurs when Department officials are developing and vetting a list of persons who might validate U.S. governmental positions." *Id.* Disclosure would also impede the government's ability to engage in a "candid internal discussion and the expression of recommendations and opinions regarding a list of potential professional and foreign contacts." *Id.* Accordingly, this information was withheld properly under Exemption 5, which protects from disclosure "recommendations" and "proposals." *Va. Beach*, 995 F.2d at 1253.

Because the Department's redactions under Exemption 5 are all proper, the Court should deny EELI's motion for summary judgment on these claims.

**C.      Exemption 6.**

Almost all of the Disputed Documents contain minor redactions pursuant to FOIA Exemption 6, which requires agencies to withhold information contained in "personnel," "medical," and "similar" files when disclosure would "constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). "The Supreme Court has directed that the phrase

'similar files' has a 'broad, rather than a narrow, meaning,' and expressly rejected the contention that such files must contain 'highly personal' or 'intimate' information to fall within the exemption." *Judicial Watch, Inc. v. United States*, 84 F. App'x 335, 338 (4th Cir. 2004). "[U]nder Supreme Court precedent, Exemption 6 extends to all information which applies to a particular individual." *Id.* (quotation marks and alteration omitted).

The exemption thus applies broadly to "exempt not just files, but also bits of personal information, such as names and addresses." *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 152 (D.C. Cir. 2006).  Recognizing the importance of protecting personal privacy, the Supreme Court has held that, unlike other FOIA exemptions, when personal privacy is at stake, the requester bears the burden to establish a significant public interest in the disclosure of the information. *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004).

Nine of the Disputed Documents contain redactions pursuant to FOIA Exemption 6.[4] These redactions are entirely proper.  As explained in the attached declaration, each of those documents contains information such as phone numbers, PINs, work e-mail addresses, and personal e-mail addresses, *see* Stein Decl. ¶¶ 34, 39, 42, 46, 47, 48, 51, which are paradigmatic examples of what Exemption 6 covers, *see, e.g.*, *Judicial Watch*, 449 F.3d at 152.  In each case, the individuals involved are still identifiable without having to list their contact information, which could needlessly subject them to unwanted messages and harassing inquiries. Accordingly those redactions are all proper.

Four of these documents contain additional information that was withheld pursuant to Exemption 6:

---

[4] *See* C05821752, Dkt. 34-3; C05897945, Dkt. 34-4; C05822362, Dkt. 34-5; C05810405, Dkt. 34-6 at 1; C05810393, Dkt. 34-6 at 2; C05809018, Dkt. 34-7 at 1; C05809021, Dkt. 34-7 at 2; C05809134, Dkt. 34-7 at 3-4; C05859569, Dkt. 34-8.

**(1)   and   (2)   C05809018, Dkt. 34-7 at 1, and C05809021, Dkt. 34-7 at 2:** These documents withheld "private and personal conversation[s] discussing career matters," Stein Decl. ¶ 47, the release of which "would constitute an unwarranted invasion of personal privacy," *id.* The release of such information is therefore prohibited by Exemption 6. *See Judicial Watch*, 84 F. App'x at 338.

**(3)   C05809134, Dkt. 34-7 at 3-4:** This document withheld forwarded "summaries of conversations" between a private individual and "Indian officials." Stein Decl., ¶ 48. The released document provides the names of the Indian officials involved, as well as links to several webpages that were referenced in the email. However, the Department redacted the summaries of the conversations themselves because the "release of the substance of these conversations could subject the individual who shared this information to the loss of access to professional contacts." *Id.* Accordingly, the privacy interests against disclosure outweigh the public interests in disclosure. *Id.*

**(4)   C05859569, Dkt. 34-8:** In this document, the Department withheld "the names of the potential partners" who were "considered as possible validators of specific climate change work." Stein Decl. ¶¶ 50-51. The "[i]ndividuals and organizations listed would not have been aware of inclusion on such a list and may not have wanted to be included on such a list." *Id.*, ¶ 51. Accordingly, release of this information could subject them to unsolicited attention and harassing inquiries, and release of this information would constitute an unwarranted invasion of personal privacy, making it appropriate for redaction under Exemption 6. *Id.* Further, even if this information were not subject to Exemption 6, it would still be subject to Exemption 5, as discussed above.

For these reasons, the Exemption 6 redactions on these documents are proper.

21

* * *

All of the redactions on the Disputed Documents are proper and fit within well-established FOIA exemptions.  Accordingly, the Court should deny EELI's motion for summary judgment and its request for *in camera* review.

## II.      The Court Should Grant Summary Judgment In Favor Of The Department.

It is well established that plaintiffs in a FOIA case can "waive[]" or "drop[]" challenges to certain withholdings or to the adequacy of the agency's search, and in such cases the abandoned challenges are taken to be undisputed, and the Court addresses "only" the "remaining" challenges. *ACLU*, 265 F. Supp. 2d at 26.  There is a considerable strategic benefit for the FOIA requesters to do this: they speed the resolution of the case by "narrow[ing] the issues for th[e] Court's review" to only the "most relevant" records. *Georgia-Pac.*, 517 F. Supp. 2d at 69 n.4 (quotation marks omitted).

The summary judgment motion filed by Plaintiffs' counsel in this case has expressly abandoned any right to challenge the adequacy of the Department's search for either of Plaintiffs' FOIA requests or the Department's withholdings, with the exception of the ten Disputed Documents that Plaintiffs have identified as the key documents that they seek.  Dkt. 34-1 at 5.  Plaintiffs have clearly concluded that the Disputed Documents represent the crux of their case, and that is why EELI seeks unredacted copies as soon as possible, at the strategic expense of bringing other potential challenges—indeed, even at the expense of waiting until the Department's production of remaining responsive documents is finished.  Accordingly, once the Court resolves the disputes regarding the ten Disputed Documents, there will be no "remaining" challenges, and the Court should grant the Department's cross motion for summary judgment, vacate any requirements to continue reviewing and producing documents, and close this case.

Plaintiffs apparently try to avoid this outcome by including a disclaimer in the motion for summary judgment, to the effect that FMELC has chosen not to join the motion for summary judgment and that FMELC may want to file more motions for summary judgment later, challenging as-yet-unspecified documents.  Dkt. 34-1 at 4.  Of course, Plaintiffs already requested permission to undertake this exact course of action, and Judge Buchanan emphatically rejected it.  As discussed above, and as both Plaintiffs expressly acknowledge in EELI's motion, Plaintiffs sought to "bifurcate[] this into the productions that we've received thus far and productions that are still ongoing, [and] we could file two separate motions for summary judgment and resolve it that way."  Dkt. 35 at 15.  Judge Buchanan denied that request and told Plaintiffs that they were to file one motion for summary judgment to resolve this case: "No.  One is enough."  *Id.*  Plaintiffs sought no further review of that ruling.

If Plaintiffs disagreed with Judge Buchanan's order, the time for Plaintiffs to challenge it was in 2015, not now—and least of all not by acknowledging the ruling while stating that they may just refuse to follow it.  Under Rule 72, Plaintiffs had fourteen days to appeal Judge Buchanan's decision to the District Court, *see* Fed. R. Civ. P. 72(a), meaning their time to challenge that order expired over 20 months ago.  Having failed to timely challenge Judge Buchanan's order, Plaintiffs are barred from doing so now.  *See, e.g., Giganti v. Gen-X Strategies, Inc.*, 222 F.R.D. 299, 304 n.8 (E.D. Va. 2004) (Ellis, J.) (noting that "failure to raise [an] objection" to a magistrate judge's ruling within the time required by Rule 72(a) "constitutes a waiver of th[e] objection"); Fed. R. Civ. P. 72(a).

Of course, the likely reason that Plaintiffs did not challenge Judge Buchanan's ruling is because all parties operated with the understanding that Plaintiffs would wait until they discovered what they considered to be the key documents, and then Plaintiff would *jointly* move

for summary judgment on just those documents to try and obtain unredacted copies quickly, as Plaintiffs have repeatedly stated is their goal.  *See, e.g.*, Dkt. 34-1 at 4 n.1; Dkt. 35 at 10.  EELI has now filed a motion in accordance with that strategy, challenging only ten key documents, waiving all other challenges, and even requesting that the Court now move onto the issue of attorney's fees.  *See* Dkt. 34-1 at 1, 5, 13.

Plaintiffs, however, have tried to keep their foot in the door by having FMELC state that it will not join the motion, suggesting that its interests have suddenly diverged from EELI's in such a drastic manner that they must file multiple, separate motions for summary judgment at different times on the *same* FOIA request.  This is unexpected, given that Plaintiffs have been operating as an indivisible unit in this entire case: they jointly filed their FOIA requests in 2015, they have the same counsel, they jointly filed the complaint, and they have jointly litigated this case in court.

If permitted, Plaintiffs will likely regroup down the road and have FMELC file its "own" motion challenging the withholdings on whatever additional documents Plaintiffs have then identified, resulting in gamesmanship and litigation by piecemeal, which is precisely what the letter and the spirit of Judge Buchanan's ruling was designed to prevent.  Given the extensive volume of documents and the highly intensive nature of the review required, Judge Buchanan told Plaintiffs: "So you've got a choice.  You can get [the documents] fast, or you can get them extensive.  Which do you want?"  Dkt. 35 at 12.  In an attempt to get the documents *both* "fast" *and* "extensive," Plaintiffs are now using the exact strategy that Judge Buchanan prohibited.  Plaintiffs know they cannot do this, *see* Dkt. 34-1 at 4, and the Court should accordingly reject their plan to keep this case open through strategic captioning of their motions.

Because Plaintiffs are fully aware of this case's procedural history and have knowingly narrowed this case to the critical Disputed Documents, the Court should conclude that, after it resolves the challenged redactions on the Disputed Documents, there will be no further dispute regarding the Department's compliance with FOIA. *See ACLU*, 265 F. Supp. 2d at 26 (where parties "waive[]" or "drop[]" challenges, those issues are no longer disputed, and the Court should address "only" the "remaining" challenges). Accordingly, the Court should (1) grant the Department's cross-motion for summary judgment after the Court resolves the propriety of the withholdings on those ten documents, (2) vacate any requirement for the Department to continue reviewing and processing documents, and (3) close this case.

## CONCLUSION

The Court should deny EELI's motion for summary judgment, grant the Department's cross-motion for summary judgment, relieve the Department of its obligation to continue reviewing and producing documents, and close this case.

Dated: June 20, 2017                          Respectfully submitted,

DANA J. BOENTE
UNITED STATES ATTORNEY

_____/s/_____
R. Trent McCotter
Assistant United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3845 (direct)
(703) 299-3983 (fax)
Trent.McCotter@usdoj.gov
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this date, I electronically filed the foregoing with the Clerk

of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to

the following:

Matthew D. Hardin
314 West Grace Street Suite 308
Richmond, VA  23220

Chaim Eliyahu Mandelbaum
726 N Nelson St., Apt 9
Arlington, VA  22203

*Counsel for Plaintiffs*


         /s/
R. Trent McCotter
Assistant United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3845 (direct)
(703) 299-3983 (fax)
Trent.McCotter@usdoj.gov
*Counsel for Defendant*