IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ENERGY & ENVIRONMENT LEGAL INSTITUTE )<br><br>and )<br><br>FREE MARKET ENVIRONMENTAL LAW CLINIC , )<br><br>     *Plaintiffs,* )<br><br>     v. )<br><br>UNITED STATES DEPARTMENT OF STATE, )<br><br>     *Defendant.* ) | Civil Action No. 1:15-cv-423<br>Hon. Liam O'Grady<br>Hon. Theresa Carroll Buchanan |

## MEMORANDUM OPINION

This matter comes before the Court on Plaintiff Energy & Environment Legal Institute's ("EELI") Motion for Summary Judgment (Dkt. No. 34) and Defendant United States Department of State's ("State") Cross Motion for Summary Judgment (Dkt. No. 40). The motions have been fully briefed and are now ripe for disposition. For the following reasons, and for good cause shown, the Court hereby **DENIES** Plaintiff's Motion for Summary Judgement and **GRANTS** Defendant's Cross Motion.

## I. BACKGROUND

EELI is a "nonprofit research, public policy and public interest litigation center . . . dedicated to advancing responsible regulation and in particular economically sustainable environmental policy." Compl. ¶ 8. Plaintiff Free Market Environmental Law Clinic (hereinafter "FMELC") is also a nonprofit research public interest litigation center dedicated to

advancing responsible regulation and sustainable environmental policy. Compl. ¶ 9. Under

FOIA, Defendant Department of State (hereinafter "State") is considered a federal agency.

This action arose out of two Freedom of Information Act (FOIA) requests made jointly

by EELI and FMELC (collectively "Plaintiffs"). On January 28, 2015, Plaintiffs first requested:

> Copies of all emails or text messages that were (a) sent to or from Kerri-Ann Jones, Daniel Reifsnyder, William Gibbons-Fly, David A. Balton, or Todd Stem whether as to, from, cc: or bcc;), (b) to or from any individual(s) with an email address ending in (including as to, from, cc: or bcc:), or includes such correspondence anywhere in the email thread:
> > i) "wwfus.org"
> > ii) "nrdc.org"
> > iii) "greenpeace.org" or "gpfdn.com," and/or
> > iv) "sicrraclub.org"
>
> Copies of all emails or text messages—only responsive correspondence, not attachments—that were (a) sent to or from any of the five State Department employees listed in item (l)(a) above, (b) which use one or more of the following terms anywhere in the email including in the body and/or the To:, From:, cc:, bcc: or Subject fields:
> > i) "Global warming"
> > ii) "Climate change"
> > iii) "Paris"
> > iv) "UNCCC"
> > v) "UNFCCC"
> > vi) "Kyoto," and/or
> > vii) "APEC."

Compl. ¶ 14.

On February 2, 2015, Plaintiffs sent a second FOIA request to Defendant. Plaintiffs

specifically requested correspondence from State's Bureau of Oceans and Environmental and

Scientific Affairs employee Day Mount to the IPCC Working Group dated November 15, 1995.

Defendant acknowledged both of Plaintiffs' requests, and labeled the January 28 and February 2

requests as F-15-02212 and F-15-02392, respectively. Defendant did not provide an initial

determination by the deadlines proscribed under FOIA. Plaintiffs then filed this suit on March

30, 2015 in order to compel the production of the requested records.

2

Defendant answered on May 1, 2015 and agreed to complete production by August 10, 2015. Defendant completed the search for Plaintiffs' second request and did not find any responsive documents. Defendant completed Part 1 of Plaintiff's January 28 request and Part 2 of the request for three of the five named individuals without any problems. For two of the individuals, however, they received an unexpectedly large number of responsive documents. The potentially-responsive records contained highly sensitive information, which could only be reviewed by two qualified individuals.

As a result of the unanticipated volume of records, Defendants filed a motion to alter the production schedule. Judge Buchanan heard oral arguments on the motion on September 4, 2015 and ruled that Defendants could produce records on a rolling basis throughout the review process. *See* Hearing Tr. at 13, Dkt. No. 35. At that hearing, Judge Buchanan also ruled on Plaintiff's procedural motion for leave to file two separate motions for summary judgment. *Id.* The transcript reads:

> [PLAINTIFFS' COUNSEL]: I believe that if we bifurcated this into the productions that we've received thus far and productions that are still ongoing, we could file two separate motions for summary judgment and resolve it that way. But we would need leave of the Court.
>
> THE COURT: No. One is enough. Thank you.

*Id.* at 15:10-15. Thus, Plaintiffs' counsel recognized that in order to file multiple motions for summary judgment, they would need the Court's leave. Judge Buchanan recognized this as well, and unambiguously denied their request. Plaintiffs did not object, nor did they appeal this decision.

Since 2015, Defendant has produced over 6,500 pages of documents which include varying levels of redactions. *See* Def.'s Mem. in Supp. at 8, Dkt. No. 41. Defendant has also

filed status reports every 90 days. Each of these reports details the progress that State has made on producing the large volume of documents in its possession.

On May 16, 2017, EELI filed a motion for summary judgment challenging Defendant's redaction of ten documents from the January 28 request. The documents in question are:

(1) C05821788, Dkt. No. 34-2;
(2) C05821752, Dkt. No. 34-3;
(3) C05897945, Dkt. No. 34-4;
(4) C05822362, Dkt. No. 34-5;
(5) C05810405, Dkt. No. 34-6 at 1;
(6) C05810393, Dkt.No. 34-6 at 2;
(7) C05809018, Dkt. No. 34-7 at 1;
(8) C05809021, Dkt. No. 34-7 at 2;
(9) C05809134, Dkt. No. 34-7 at 3-4; and
(10) C05859569, Dkt. No. 34-8.

Def.'s Mem. in Supp. at 9.

In response to EELI's motion, on June 20, 2017, Defendant filed an opposition brief and a cross-motion seeking summary judgment against EELI and FMELC jointly. In support of its position, Defendant included a declaration from Eric Stein, the Director of the Office of Information Programs and Services at the Department of State. Stein's declaration is 23 pages long and succinctly provides rationale for each of the disputed redactions in the 10 documents.

FMELC has opposed Defendant's cross-motion, but has declined to join EELI's Motion for Summary Judgment, seeking to preserve its summary judgment motion for a later date. In sum, the motions have now been fully briefed, and the Court found that oral argument was not necessary for their resolution.

## II. LEGAL STANDARD

FOIA disputes of this nature should generally be resolved on summary judgment. *See Hanson v. U.S. Agency for Int'l Dev.*, 372 F.3d 286, 290 (4th Cir. 2004). Federal Rule of Civil Procedure 56 provides that summary judgment is proper "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). When parties file cross-motions for summary judgment, a court considers "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Defs. of Wildlife v. N. Carolina Dep't of Transp.*, 762 F.3d 374, 392-93 (4th Cir. 2014) (citation and internal quotation marks omitted).

To obtain summary judgment in a FOIA action, an agency must show that, viewing the facts in the light most favorable to the requester, there is no genuine issue of material fact with regard to the agency's compliance with FOIA. *See Wickwire Gavin, P.C. v. U.S. Postal Serv.*, 356 F.3d 588, 591 (4th Cir. 2004); *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994). Summary Judgment may be awarded "based solely upon the information provided in affidavits or declarations when the affidavits or declarations describe the search conducted, explain the basis for its response, and are not controverted by contrary evidence in the record or evidence that the agency acted in bad faith." *Montenegro v. Fed. Bureau of Investigation*, No. 1:16CV1400 (JCC/JFA), 2017 WL 2692613, at *3 (E.D. Va. June 22, 2017) (citing *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)). Agency declarations are to be accorded a presumption of good faith. *See, e.g.*, *Bowers v. U.S. Dep't of Justice*, 930 F.2d 350, 357 (4th Cir. 1991). "To prevail over this presumption[,] a requestor must demonstrate a material issue by producing evidence, through affidavits or other appropriate means, contradicting the adequacy of the search or suggesting bad faith." *Havemann v. Colvin*, 629 Fed. App'x 537, 539 (4th Cir. 2015) (citing *Miller v. United States Dep't of State*, 779 F.2d 1378, 1384 (8th Cir. 1985)).

## III. DISCUSSION

There are two disputes at issue in this case: one is procedural and the other is substantive. Procedurally, Defendant's cross-motion raises the issue of whether FMELC may file a subsequent motion for summary judgment in spite of Judge Buchanan's prior ruling. Substantively, both EELI's motion and Defendant's cross-motion dispute the propriety of the redactions in the 10 representative documents under each of the claimed FOIA exemptions.

The following discussion will first highlight the parties' positions. Next, it will analyze the procedural question presented by Plaintiffs' respective positions in this case. It will conclude by addressing each FOIA exemption individually.

### A.    The Parties' Positions

EELI argues that the ten representative documents are just a small sample of unjustified redactions and partial withholdings under FOIA. Specifically, EELI claims that the withholdings made under FOIA Exemptions 1, 5, and 6 were improperly applied to these documents and to others. In the alternative, EELI requests that the Court order that Defendant prepare an index that would justify in greater detail the redactions it has claimed (hereinafter a *Vaughn* index) and conduct *in camera* review of the documents to determine whether the partial withholdings and redactions are subject to release under FOIA. In accordance with the *Vaughn* index, EELI further requests the production of any withholdings or redactions that are found to be unjustifiable. Finally, EELI also requests briefing on the issue of attorneys' fees.

In the Cross-Motion for Summary Judgment, Defendant makes two main arguments. Defendant first argues that the redactions are substantively proper under the FOIA exemptions, and that the Court should therefore rule against EELI's motion for summary judgment. Next, Defendant argues that the Court should enter summary judgment in its favor, vacate any further

requirement for the production of documents, and close this case. Defendant notes that, once the dispute regarding the ten documents has been resolved, there will be no remaining challenges to Defendant's production. Rather, Defendants argue that Plaintiffs are attempting to avoid the complete resolution of this case and circumvent Judge Buchanan's ruling by having EELI file a motion for summary judgment separately from FMELC to preserve the option to file a motion for summary judgment on the yet-to-be produced documents at a later date.

Plaintiffs independently filed responses to Defendant's cross-motion. As discussed above, EELI opposes Defendant's cross-motion for the same substantive reasons stated in its own motion for summary judgment. Independently, Plaintiff FMELC opposes Defendant's cross-motion on three grounds. First, FMELC contends that it has not waived any of its claims, as they did not join EELI's motion for summary judgment and are pursuing different relief from EELI. Next, FMELC argues that granting Defendant's motion for summary judgment would be premature, as they have not completed production as yet. Finally, FMELC contends that Defendant has not met its burden of establishing that the contested withholdings were proper. The Court first addresses whether Plaintiffs may properly bring two separate motions for summary judgment. It then addresses the substantive merits of Defendant's motion.

**B.**  **Plaintiffs May Not File Consecutive Motions for Summary Judgment**

Defendant urges this Court to grant its motion for summary judgment against both Plaintiffs because otherwise, Plaintiffs could circumvent Judge Buchanan's previous court order denying their request for leave to file two summary judgment motions. In response, FMELC argues that Judge Buchanan's order does not preclude EELI and FMELC from separately filing motions for summary judgement, as they have different requests for relief and they are separate

parties for the purpose of Local Rule 56. As separate parties, FMELC asserts that it cannot be bound by EELI's motion for summary judgment.

Local Rule 56(c) states that "[u]nless permitted by leave of court, a party shall not file separate motions for summary judgment addressing separate grounds for summary judgment." In this case, however, Judge Buchanan explicitly ruled that both parties (who were represented by the same counsel) were only permitted to file a single motion for summary judgment. Moreover, Federal Rule 72 allows fourteen days to appeal the decision of a magistrate judge to the district court. Fed. R. Civ. P. 72(a). Failing to timely object to a magistrate judge's ruling constitutes a waiver of the objection. *See, e.g., Giganti v. Gen-X Strategies, Inc.*, 222 F.R.D. 299, 304 n.8 (E.D. Va. 2004) (Ellis, J.).

Because neither Plaintiff objected to Judge Buchanan's September 4, 2015 ruling, it became binding. *TFWS, Inc. v. Franchot*, 572 F.3d 186, 191 (4th Cir. 2009) (explaining that the law-of-the-case doctrine provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case) (quoting *United States v. Aramony*, 166 F.3d 655, 661 (4th Cir. 1999)); *see also Carlson v. Boston Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017). Despite FMELC's contention that they are not bound by EELI's summary judgment motion, Judge Buchanan's ruling remains the law of the case. Judge Buchanan explicitly denied Plaintiffs' request for two separate summary judgment motions on the productions received and future productions in 2015. Plaintiffs did not appeal this ruling within the time prescribed under Rule 72, or at any time since then. Moreover, there is nothing ambiguous about Judge Buchanan's ruling. In response to Plaintiff's request for multiple summary judgment motions, she stated "No, one is enough." Thus, Judge Buchanan's order continues to govern the issue of subdividing summary judgment throughout this case.

Contrary to FMELC's assertions, this does not yield any grossly inequitable result. Plaintiffs jointly filed the FOIA requests at issue. They then jointly filed this lawsuit, maintaining the same attorneys to represent them. They also requested the same relief and their interests are perfectly aligned in that respect. Plaintiffs cannot attempt to evade this Court's order by reorganizing and reframing their request for two summary judgment motions. If their interests were truly distinct or in tension, they would have needed to hire separate counsel to represent them. They have not done so, and there is no evidence to suggest a sudden rift between the parties. Therefore, in accordance with Judge Buchanan's previous order, Plaintiffs may not file an additional motion for summary judgment beyond the one that is currently pending before the Court. As a result of this conclusion, the instant motion is dispositive for the case as a whole.

## C.    The Freedom of Information Act

Plaintiff argues that Defendant is improperly withholding information by invoking FOIA Exemptions 1, 5, and 6. Specifically, Plaintiff first contends that four documents redacted as "classified information" under Exemption 1 (C05897945, C05822362, C05810405, and C05810393) were improperly redacted because they did not contain national secrets. Plaintiff then contends that the Exemption 5 redactions (C05821788, C05821752, C05897945, and C05859569) were improper because the materials were not intra-agency communications, nor were they pre-decisional or deliberative, and Defendant waived the exemption by sharing some of the disputed material outside of the agency. Finally, Plaintiff argues that Exemption 6 for personnel and medical files that would constitute an invasion of privacy (C05809018, C05809021, C05809134, and C05859569) was improperly applied because full-length conversations between State and activist group employees would not violate personal privacy nor would releasing the parties' identities.

The Freedom of Information Act (FOIA) provides that federal agencies shall "upon any request for records which reasonably describe such records . . . make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A) (2000). "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).

FOIA disclosures are subject to nine specific statutory exemptions. 5 U.S.C. § 552(b). In general, FOIA exemptions should be narrowly construed to favor disclosure. *See Hanson v. U.S. Agency for Int'l Dev.*, 372 F.3d 286, 290–91 (4th Cir. 2004) (citing *Bowers v. U.S. Dept. of Justice,* 930 F.2d 350, 354 (4th Cir.1991)). The Act, however, expressly recognizes that "public disclosure is not always in the public interest." *Baldrige v. Shapiro*, 455 U.S. 345, 352 (1982).

"Whether a document fits within one of FOIA's prescribed exemptions is a matter of law." *Wickwire Gavin, PC v. U.S. Postal Serv.*, 356 F.3d 588, 591 (4th Cir. 2004). District courts are to review *de novo* all FOIA exemption claims advanced, 5 U.S.C. § 552(a)(4)(B), and the Government bears the burden of demonstrating that a requested document falls into one of the categories of FOIA exemptions. *See City of Virginia Beach, Va. v. U.S. Dep't of Commerce,* 995 F.2d 1247, 1252 (4th Cir.1993); 5 U.S.C. § 552(a)(4)(B).

The Government can satisfy this burden by "describing the withheld material with reasonable specificity and explaining how it falls under one of the enumerated exemptions." *Hanson v. U.S. Agency for Int'l Dev.*, 372 F.3d 286, 290–91 (4th Cir. 2004). These documents have become known as *Vaughn* indices or declarations, and they must reasonably specify the contents of the documents and the reasons for withholding them. *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). A *Vaughn* index must "'specify in detail which portions of the document are

disclosable and which are allegedly exempt' through a system of itemizing and indexing that correlates statements explaining an exemption justification with the relevant portions of the document.'" *Virginia-Pilot Media Companies, LLC v. Dep't of Justice*, 147 F. Supp. 3d at 449–50 (quoting *Vaughn*, 484 F.2d at 827)). There must be "reasonable specificity" in the descriptions to determine whether the material is exempt from disclosure. *Rein*, 553 F.3d at 368 (citing *Ethyl Corp. v. U.S. E.P.A.*, 25 F.3d 1241, 1250 (4th Cir. 1994)). In this regard, an agency cannot provide generalized privilege claims; it must describe "each document or portion thereof withheld, and for each withholding it must discuss the consequences of disclosing the sought-after information." *King v. U.S. Dep't of Justice*, 830 F.2d 210, 223–24 (D.C. Cir. 1987).

Where *Vaughn* declarations are insufficient, FOIA makes in camera review available to courts. *City of Va. Beach v. Dep't of Commerce*, 995 F.2d 1247, 1252 n.12 (4th Cir. 1993); *Elec. Privacy Info. Ctr. v. DOJ*, 584 F. Supp. 2d 65, 82-83 (D.D.C. 2008) (stating that in camera review is appropriate where agency affidavits are deficient with respect to segregability analysis and relatively few number of documents are at issue). On the other hand, there is no obligation to review documents; the Fourth Circuit "has stated that the legislative history of § 552(a)(4)(B) 'discloses a congressional intention that the judge need not inspect the document in camera or require its production. He may act on the basis of testimony or affidavits.'" *Virginia-Pilot Media Companies, LLC v. Dep't of Justice*, 147 F. Supp. 3d 437, 449–50 (E.D. Va. 2015) (quoting *Young v. C.I.A.*, 972 F.2d 536, 538 (4th Cir.1992)). Thus, an agency should be given the opportunity, to establish the need to withhold the documents "by means of detailed affidavits or oral testimony." *Mink*, 410 U.S. at 93. In camera review is appropriate only where the *Vaughn* index is "facially inadequate." *Rein v. U.S. Patent & Trademark Office*, 553 F.3d 353, 366 (4th Cir. 2009).

Here, Plaintiff requests that the Court Order a *Vaughn* index for all the redacted documents, however it only attaches 10 documents to its motion as a representative sample. Under FOIA case law, requesters may waive challenges to certain documents or narrow the scope of their request in order to achieve quicker results. *See Georgia-Pac. Corp. v. Internal Revenue Serv.*, 517 F. Supp. 2d 65, 70 n.4 (D.D.C. 2007), *vacated in part on other grounds sub nom. Georgia-Pac. Corp. v. I.R.S.*, No. CIV.A. 05-2431 (RBW), 2008 WL 2205267 (D.D.C. Apr. 9, 2008). When they do so, courts consider the abandoned claims to be undisputed and address only the asserted challenges. *See ACLU v. Dep't of Justice*, 265 F. Supp. 2d 20, 26 (D.D.C. 2003). Therefore, as discussed in further detail below, because Plaintiffs fail in their challenge to Defendant's redactions, and because they may not file another motion for summary judgment, their arguments regarding the unspecified documents are summarily rejected. *Id.*

### 1. Exemption 1

Plaintiff contends that the withholdings under Exemption 1 were improper because they were not shared in the manner which would "befit a matter of classified status." Specifically, plaintiff notes that national secrets would likely not be sent to and from Gmail or Hotmail accounts, as the withheld information in C05897945 and C05822362 was.

Exemption 1 of the Freedom of Information Act protects from disclosure information that is "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) [is] in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). An agency may invoke this exemption "only if it complies with classification procedures established by the relevant executive order and withholds only such material as conforms to the order's substantive criteria for classification." *King*, 830 F.2d at 214.

"The court owes substantial weight to detailed agency explanations in the national

security context," *King*, 830 F.2d at 217, as well as to "an agency's affidavit concerning the

details of the classified status of the disputed record." *Military Audit Project v. Casey*, 656 F.2d

724, 738 (D.C. Cir. 1981). That said, summary judgment in favor of an agency invoking

Exemption 1 is appropriate "only if (1) the agency affidavits describe the documents withheld

and the justifications for nondisclosure in enough detail and with sufficient specificity to

demonstrate that material withheld is logically within the domain of the exemption claimed, and

(2) the affidavits are neither controverted by contrary record evidence nor impugned by bad faith

on the part of the agency." *King*, 830 F.2d at 217 (citing *Miller v. Casey*, 235 U.S. App. D.C. 11,

14 (1984)).

Defendant maintains that the information withheld under Exemption 1 was done so

properly under Executive Order 13526, which states that "'Confidential' shall be applied to

information, the unauthorized disclosure of which reasonably could be expected to cause damage

to the national security that the original classification authority is able to identify or describe."

Executive Order 13525, 75 FR 707 (Dec. 29, 2009) ("Classified National Security

Information").[1]  Defendant then offers explanations for each document, asserting that the

redacted text contained information regarding Defendant's strategy regarding climate change

treaty efforts with foreign nationals, and as such, the confidentiality of this information is

paramount to successful foreign negotiations and relations. Defendant also provided the dates

that these documents were classified: August 3, 2015, January 8, 2016, and May 25, 2016.

EELI's primary argument is that the classification constitutes improper withholding

because the information was unclassified when their original FOIA request was made. In

---

[1] Relatedly, Executive Order 13526 ("E.O. 13526") "prescribes a uniform system for classifying, safeguarding, and declassifying national security information."

making this argument, EELI leans heavily on the statement that "status of a particular document at the time the FOIA request is submitted determines whether the unreasonable failure to produce that document is an unlawful withholding." *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 34 F. Supp. 2d 28, 44 (D.D.C. 1998). This precedent is inapposite.

The court in *Judicial Watch* was concerned with documents being removed from an agency to avoid disclosure after a FOIA request by identifying them as not within an agency's possession. *See id.* Here, documents are not being improperly moved or destroyed to avoid disclosure. EELI provides no support for the proposition that a document's status as "classified" at the time of the FOIA request governs the entire process. In fact, the case law suggests that classification challenges are based on the law when the classification was made. *See Campbell v. United States Dep't of Justice*, 164 F.3d 20, 29 (D.C. Cir. 1998) ("[A]bsent a request by the agency to reevaluate an Exemption 1 determination based on a new executive order . . . the court must evaluate the agency's decision under the executive order in force at the time the classification was made."). Moreover, there is a wealth of cases that suggest that a document's status can be re-evaluated during the course of litigation due to amended orders. *See, e.g.*, *Military Audit Project*, 656 F.2d at 737; *Baez v. United States Dep't of Justice*, 647 F.2d 1328, 1233 (D.C. Cir. 1980). Thus, Defendant's classification of information as "confidential," is not automatically invalid due to its timing.

Defendant has also provided sufficient information about the withheld material to demonstrate that it is properly encompassed by Exemption 1. First, Defendant has cited and provided the Executive Order under which the information is classified. The Stein Declaration also certifies that Defendant complied with the procedures set forth in the relevant Executive

Orders. Defendant has further identified which sections of the order are relevant and described the information withheld and justification for doing so in great detail.

For instance, for Document C05897945, Defendant explained that the information withheld "consists of a confidential communication from an Algerian diplomat to a Department official, both serving as Co-Chairs of an ad hoc working group under the UNFCCC, that includes possible topics and points to be discussed at an upcoming meeting." Stein Decl. ¶ 37. It further states that the information "was communicated for the purposes of facilitating international negotiations with an expectation of confidentiality," which is "essential to the formulation and successful implementation of U.S. foreign policy." *Id.* It continues: "[r]elease of foreign government information provided in confidence, either voluntarily by the Department or by order of a court, would cause foreign officials to believe that U.S. officials are not able or willing to observe the confidentiality expected in such interchanges." *Id.* This explanation is plainly logical on its face, and Plaintiffs do not give any reason to doubt it. Thus, Defendants have met their burden of proving that the withheld information was properly redacted.

### 2. Exemption 5

Plaintiff also argues that Defendant improperly withheld information under FOIA Exemption 5. First, Plaintiff asserts that the information is not "pre-decisional" to any identifiable final agency action. Next, Plaintiff contends that Defendant waived Exemption 5 status by sharing those documents outside of the State Department. Both of these arguments are unavailing.

FOIA Exemption 5 provides that "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency," need not be disclosed. 5 U.S.C. § 552(b)(5). "This privilege is designed to protect the

15

quality of administrative decision-making by ensuring that it is not done 'in a fishbowl.'" *City of Va. Beach v. U.S. Dep't of Commerce*, 995 F.2d 1247, 1252 (4th Cir. 1993).

Exemption 5 protects documents shielded by the deliberative process privilege. *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 149-50 (1975). To justify exemption under the deliberative process privilege, "the government must show that, in the context in which the materials [were] used, the documents [were] both predecisional and deliberative." *City of Virginia Beach*, 995 F.2d at 1253 (internal quotation marks and citation omitted). Documents "prepared in order to assist an agency decisionmaker in arriving at his decision," are considered predecisional. *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975). In addition, documents that "reflect[ ] the give-and-take of the consultative process by revealing the manner in which the agency evaluates possible alternative policies or outcomes," are considered deliberative. *City of Virginia Beach*, 995 F.2d at 1253 (internal quotation marks and citation omitted). The privilege thus protects "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

Documents "peripheral to actual policy formation" are not protected. *Ethyl Corp. v. U.S. E.P.A.*, 25 F.3d 1241, 1248 (4th Cir. 1994). "[W]hen material could not reasonably be said to reveal an agency's or official's mode of formulating or exercising policy-implicating judgment, the deliberative process privilege is inapplicable." *See Playboy Enterprises v. Dep't of Justice*, 677 F.2d 931, 935 (D.C. Cir. 1982) (holding that factual report was not exempt because investigating facts and the subsequent report were not "intertwined with the policy-making process.").

The Government "need not identify a specific decision in connection with which a memorandum is prepared." *Sears, Roebuck & Co.*, 421 U.S. at 151-52 nn.18-19. In fact, the Supreme Court has explained that "[a]gencies are, and properly should be, engaged in a continuing process of examining their policies; this process will generate memoranda containing recommendations which do not ripen into agency decisions; and the lower courts should be wary of interfering with this process . . . the line between predecisional documents and postdecisional documents may not always be a bright one." *Id.* In this analysis, the document author's identity and position, as well as the recipients' place within the decisional hierarchy are relevant factors to be considered. *Ethyl Corp. v. U.S. E.P.A.*, 25 F.3d 1241, 1249 (4th Cir. 1994).

> a.  Document C05897945

Plaintiffs contend that Defendant has not stated an agency policy or decision to which the documents contributed. With regard to Document C05897945, Plaintiff argues that Defendant has provided no final decision that warrants the withholding of the "internal discussions among U.S. Government Officials regarding a possible response to a foreign official as well as recommendations on possible topics for discussion and talking points for an upcoming meeting." Stein Decl. ¶ 38. Contrary to Plaintiff's assertion, Defendant does not need to explicitly state the policy or decision to which these conversations were related. Even so, Defendant has explained that the redacted information was related to formulating a response to a foreign official and to internal discussions about the possible topics for a future meeting.

These are core functions of the Department of State, which is responsible for determining how, when, and under what circumstances it should engage in negotiations with foreign governments. Climate change is a sensitive political issue, both abroad and domestically. Therefore, when developing an official position and debating how to best approach a foreign

diplomat, the Agency should be granted some shield of confidentiality. Indeed, as Defendant points out, the release of this information would likely chill the "open and frank expression of ideas, recommendations, and opinions that occurs when government officials are developing an official position on climate change." Stein Decl. ¶ 38. While this broad statement may not be enough to shield some documents, the context here allows for the conclusion that the information is protected.

### b.     Document C05859569

Plaintiff argues that Defendant also withheld information in Document C05859569 "regarding a draft list of possible validators of . . . climate change work" as "predecisional to a final list of validators," without providing sufficient justification as to why that should be withheld given that they appear in other "substantively identical discussions produced under FOIA by other agencies." EELI Reply at 14. This argument fails.

The contents of this document must be placed in context. Although a list of names is not inherently predecisional or deliberative, it certainly can be; and in this case, it is. The document at issue here contains a draft list of "climate change validators." This list was subsequently edited and reduced before Defendant created a final list. Therefore, the draft list plainly reveals the process through which the final list was decided. Namely, it shows which individuals or organizations Defendant chose to exclude, and which ones it ultimately included. The Court therefore concludes that this document was properly withheld under Exemption 5.

### c.     Document C05821788

For the purpose of discussing potential Department engagement with congressional staff," the remaining emails in this chain "contain back and forth deliberations about how to brief and otherwise engage with Congress on the Administration's positions related to a climate

18

change agreement." Stein Decl. ¶ 30. Plaintiffs nonetheless argue that these documents are not

deliberative. Further, Plaintiffs argue that the "consultant corollary" doctrine is inapplicable to

the documents because Defendant was not seeking advice from an outside organization; rather, a

non-agency was seeking advice from Defendant.

Under the "consultant corollary" doctrine, FOIA Exemption 5 applies to records

submitted by outside consultants that "played essentially the same part in an agency's process of

deliberation as documents prepared by agency personnel might have done." *Nat'l Inst. of

Military Justice v. U.S. Dep't of Def.*, 512 F.3d 677, 682 (D.C. Cir. 2008) (citing *Dep't of

Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 9 (2001)). An outside consultant

"does not represent an interest of its own, or the interest of any other client, when it advises the

agency that hires it . . . Its only obligations are to truth and its sense of what good judgment calls

for, and in those respects the consultant functions just as an employee would be expected to do."

*Klamath Water*, 532 U.S. at 10-11. While the deliberations of the agency are protected, the

deliberations of a non-agency are not considered to be included as "intra-agency" or "inter-

agency." *See Dow Jones & Co. v. Dep't of Justice*, 917 F.2d 571, 575 (D.C. Cir. 1990).

Plaintiffs misread Defendant's justification of Exemption 5. Defendants assert that the

"Jennifer Morgan" email is an intra-agency email between Department officials, not between

Jennifer Morgan and the Department. In reality, the email was written in preparation for a

meeting with non-agency staffers, and it discussed whether the Department should engage with

Congressional Staff, with subsequent follow-up on how to do so. Stein Decl. ¶ 30. It is

therefore explicitly predecisional to the determination to a "final determination on what

information to share with congressional staff related to the agreement." *Id.* ¶ 31. While Plaintiff

further argues that a non-agency was requesting advice from Defendant, the redacted portions of

the emails are from emails that occurred *prior* to the request for advice from the non-agency, and, in fact, are from two different email threads. It does not logically follow that the previous emails regarding Jennifer Morgan were somehow related to advising a non-agency on "an exciting opportunity that has come to WRI," a month later. Therefore, Defendant properly applied Exemption 5 to the information withheld in Document C05821788.

### 3. Exemption 6

Finally, Plaintiff contends that Defendant improperly redacted information that does not fall within the bounds of Exemption 6. Plaintiff first asserts that Defendant withheld whole conversations that would not be found in personnel or medical files between State employees and an outside corporation that "played a substantial advisory role" in the Paris Climate Agreement process. Next, Plaintiffs argue that names of validators were improperly withheld in Document C05859569 due to "personal privacy," because there was no protected interest (as evidenced by other agencies' willingness to disclose such names).

Federal agencies are exempt from disclosing "personnel and medical files and similar files[,] the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C.A. § 552(b)(6). The phrase "similar files" has a "broad, rather than a narrow, meaning." *United States Dep't of State v. Washington Post Co.*, 456 U.S. 595, 598 (1982). It "extends to all information which applies to a particular individual," *Judicial Watch, Inc. v. United States*, 84 Fed. App'x 335, 338 (4th Cir. 2004) (quotation marks and alternation omitted), including "not just files, but also bits of personal information, such as names and addresses," *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 152 (D.C. Cir. 2006). The requesting party bears the burden of establishing a significant public interest in the disclosure of such information. *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004).

20

In order to determine if an invasion of personal privacy is "clearly unwarranted," courts weigh the individual's privacy interests against the public interest in disclosure. *Solers, Inc. v. Internal Revenue Serv.*, 827 F.3d 323, 332 (4th Cir. 2016). Courts first look to see "whether there is any privacy interest that outweighs the generalized public interest in disclosure," and, if so, the court then determines "if the public interests in disclosing the particular information requested outweigh those privacy interests." *Havemann*, 629 Fed. App'x 537, 539 (4th Cir. 2015) (citing *Yonemoto v. Dep't of Veterans Affairs*, 686 F.3d 681, 693-94 (9th Cir. 2012)). Courts consider "the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *U.S. Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 497 (1994) (alteration in original) (quoting *Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989)). This circuit has previously described the public interest in the names of government employees as 'negligible' without a "compelling allegation of agency corruption or illegality." *Neely v. FBI*, 208 F.3d 461, 464 (4th Cir. 2000); *see also Judicial Watch, Inc. v. United States*, 84 Fed. App'x 335, 339 (4th Cir. 2004).

### a. Documents C05809018 and C05809021

Defendant asserts that the withheld information in Documents C05809018 and C05809021 is "a private and personal conversation discussing career matters between the two individuals." Stein Decl. ¶ 47. Defendant argues that the information could subject the parties to "unsolicited attention, harassing inquiries, and unwanted communications and would shed no light on the operations and activities of the U.S. Government." Stein Decl. ¶ 47. Plaintiff rebuts this claim, arguing that "what State may be saying, while trying not to say it, is that these two individuals are also close friends and this closeness, if released in this form, might be

embarrassing." EELI Reply at 16. They further argue that the redacted information would not be found within personnel files and would not violate the parties' personal privacy.

Plaintiffs' arguments are unfounded. In attempting to undercut Defendant's sworn justifications, Plaintiffs offer conclusory allegations that embarrassing statements do not constitute a FOIA exemption. They further hint at bad faith on the part of Defendant. EELI Reply at 16. Plaintiffs, however, do not provide any evidence or support for that allegation. More importantly, they have not provided any justification as to why there is significant public interest in the disclosure of a personal conversation regarding "career matters." Therefore, they have not met their burden of showing that disclosure would be in the public interest. *See Nat'l Archives & Records Admin. v. Favish*, 541 U.S. at 172.

Furthermore, while a personal conversation related to career matters may not be the sort of file contained within formal "personnel files," Defendant provides a credible basis to conclude that these conversations fit within the broad reading of "similar files" that include personal information. *United States Dep't of State v. Washington Post Co.*, 456 U.S. at 598. Individuals' career strategy and personal goals and aspirations are often just as private and personal as their medical history and are therefore entitled to the same protection. Thus, in light of the potential personal import of this information and the lack of any cognizable public interest in disclosure, Defendant properly withheld this information under Exemption 6.

b.    <u>Document C05859569</u>

Defendant then asserts that the names of potential climate validators were properly withheld under Exemption 6 because "individuals and organizations listed would not have been aware of inclusion on such a list and may not have wanted to be included on such a list." Stein Decl. ¶ 51. Defendant claims that releasing this information would lead to "unsolicited attention

and harassing inquiries, and release of this information would constitute an unwarranted invasion of personal privacy." Stein Decl. ¶ 51.

As discussed above, this list was properly withheld under Exemption 5. Alternatively, the Court now concludes that non-disclosure was also proper under Exemption 6. Specifically, the names of non-agency individuals and State's view of their political positions fall under the broad meaning of "similar files" established by the Supreme Court. *See United States Dep't of State v. Washington Post Co.*, 456 U.S. at 598. This list contains a number of individuals and organizations that share a common political and scientific viewpoint. They are not government officials, and they are not aware that they were included on the list. Moreover, they did not reach out to the government in order to obtain a place on the list; rather, they were unwittingly selected by State Department officials as potentially helpful to the Agency's policy goals. Under these circumstances, there is an overwhelming privacy interest in withholding their information. Further, Plaintiffs do not provide any concrete reasons why revealing the names of these validators would outweigh the privacy interests of the listed individuals. Thus, the names were properly withheld.

c.    Document C05809134

Document C05809134 is a summary of conversations between a private individual and "Indian officials." Stein Decl. ¶ 48. The released document contains the names of the officials as well as links to webpages that were included in the emails. However, the full summary of the conversations was redacted because the release of this information "could subject the individual who shared this information to the loss of access to professional contacts." *Id.* Plaintiffs do not address this document at all in their briefing.

The fact that these emails contain conversations with a private individual rather than Agency employees lends support to their redaction. When private individuals have relationships with foreign officials, State Department officials may well acquire useful information from those individuals. Therefore, when disclosing the nature of those sources could harm private individuals, the details of their conversations can and should be protected under Exemption 6. Moreover, Defendant has already released the names of the Indian officials and given Plaintiffs a flavor of the summaries in the document through the hyperlinks it provided. Accordingly, without any substantive opposition from Plaintiff, the Court concludes that these documents were properly withheld.

## IV. CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiffs' corresponding Motion for Summary Judgment. Because Judge Buchanan's previous order explicitly precluded Plaintiffs from filing two separate motions for summary judgment, this decision is final as applied to all Plaintiffs. Accordingly, this case is hereby **DISMISSED**.

An appropriate order shall issue.

August 18, 2017
Alexandria, Virginia

Liam O'Grady
United States District Judge